R. L. DORR, *for appellants.*

D. W. NOYES, *for respondent.*

---

## SUPREME COURT.

GEORGE STOKER agt. JAMES C. COGSWELL and others.

Where, on a loan of money, the borrower pledged *certificates of stock* to the lender as security, the *full par value* of which was equal to the amount of money loaned, and the stock thereupon was transferred to the pledgee on the books of the company, and it was agreed that in default of payment of the half-yearly interest by the pledgor, or of the principal sum loaned, as in the agreement specified, the stock was to become *absolutely and exclusively the property of the pledgee;* and nothing had been paid on account of either principal or interest for a number of years, and both pledgor and pledgee had treated the stock as *forfeited* under the agreement to the pledgee, who then held it, but had never taken any proceedings to foreclose the pledge,

*Held,* in an action by a *judgment creditor of the pledgor,* brought more than four years after the pledge, that so long as the stock remained with the pledgee, the debt existed, and the pledge was collateral to it, and the stock liable to be redeemed by the pledgor. To this *equity of redemption* the plaintiff was entitled as the creditor of the pledgor, having exhausted his remedy at law. And the rights and equities of the pledgor were precisely those of the plaintiff.

The parties, borrower and lender, at the time of the loan resided and still reside in Nova Scotia. The money was loaned there, and in the currency of that country, and no place of payment being fixed by the parties, *held,* that the law makes the *domicil of the creditor* the place at which payment is to be made to the creditor on redemption by the plaintiff.

*New York Special Term, February,* 1863.

IN 1857, the defendant, Hiram Hyde, of Truro, Nova Scotia, borrowed of James C. Cogswell, of Halifax, £3,000,

Nova Scotia currency, pledging as security four certificates representing 120 shares of the capital stock of the American Telegraph Company (a corporation of the state of New York) of the par value of $12,000.

The agreement between Hyde and Cogswell provided as follows : " These certificates are to be transferred to the name of the said James C. Cogswell, but the said Hiram Hyde is to be entitled to all the profits so long as he shall pay to the said James C. Cogswell six per cent. interest, half-yearly, upon the sum advanced. In case of default in such payment, they become absolutely the property of said James C. Cogswell, exclusive of other means of repayment, should such stock not realize the sums advanced. The said Hiram Hyde will repay the said sum of £3,000 within three years from the date hereof, with interest ; otherwise the said stock shall become the property of the said Cogswell, exclusively, as above stated."

The 120 shares were transferred to Cogswell upon the company's books, and a new certificate was issued to him therefor. The sum loaned by him was equal to the full par value of said stock.

This action was commenced about December, 1861, more than four years after the loan to Hyde. Cogswell still held the stock. Nothing had been paid on account of either principal, debt or interest. For a long time both Hyde and Cogswell had treated the stock as forfeited to Cogswell under the agreement, but no proceedings had been taken by Cogswell to foreclose the pledge.

The complaint alleged that Stoker, the plaintiff, was the assignee of a certain judgment against Hiram Hyde, upon which execution had been returned unsatisfied ; that in the suit in which such judgment had been obtained, an attachment had been issued against the property of Hyde as a non-resident, and served upon the Telegraph company ; that Hyde was the real owner of the 120 shares of stock in question ; that any claim that Cogswell might have against

such stock was much less than its actual value; and plaintiff prayed an injunction, and that a receiver might be appointed to sell said stock; "and that said judgment be paid or satisfied out of said stock or its proceeds," with costs.

The defendant Cogswell set forth in his answer that he had loaned to Hyde the full par value of the stock, believing the stock to be fully paid up (the certificates not indicating the contrary); that he had subsequently paid to the company an assessment thereon of ten per cent.; that he had been put to various expenses, &c., &c.; that the whole sum loaned by him to Hyde, to wit, $12,000, was unpaid; that no interest had been paid thereon; and he claimed, 1st, that the stock had become his absolute property by Hyde's failure to comply with the said agreement; 2d, if the court should decide otherwise, he claimed that he should be repaid his loan and interest—the ten per cent. assessment and interest—besides his costs, expenses and disbursements.

The case was tried before Hon. W. F. ALLEN, at February term, 1863, at New York city. The rate of exchange between New York and Halifax was then very high. The plaintiff insisted upon his right to redeem the stock from the pledge to Cogswell, by the payment into court of the loan and assessment, with interest, in current funds. Cogswell claimed that the stock was his absolutely; that there was no equity of redemption; but that, if the court allowed Stoker to redeem, he, Cogswell, should be protected against loss by exchange, &c.

GALPIN, LAWSON and D. D. FIELD, *for plaintiff.*

EDWARDS & ODELL, *for defendants Cogswell and Hyde,* argued that, as in 1857, Hyde was owner of the stock, which was free from the claims of creditors, he could do with it and dispose of it as he pleased. (2 *Coms.,* 274.) That the agreement with Cogswell was valid in all its

parts; was made by competent parties; was free from am-
biguities; no fraud was alleged against it; the parties
were satisfied with it; and the court should enforce it,
rather than make a new contract at the solicitation of a
*stranger.*  That the only objection made by the court
against *clauses of forfeiture* was, that they were theoreti-
cally *oppressive*—usually exacted by the lender, and assented
to by the borrower under the pressure or *duress* of *necessity.*
Therefore the law reserves to the *borrower* the right to
relieve himself from the extortion of the lender, by redeem-
ing the pledge within a reasonable time after forfeiture.
Here the objection cannot be taken.  The loan was the
full par value of the stock, which was only partially paid
up, which fact Cogswell was ignorant of; and he was also
afterwards compelled to pay assessments thereon.

But if the forfeiture was *voidable,* Hyde alone could avoid
it.  (*Duress,* 1 *Par. on Cont.,* 322; *Usury,* 5 *Seld.,* 83; *In-
fancy,* 13 *Barb.,* 536; *Fraud,* 20 *Johns.,* 481; *Statute of
Limitations,* 5 *Seld.,* 83.)  Failure of consideration, statute
of frauds, etc., are all *personal* defences, which a party may
waive, (20 *Barb.,* 435,) and which cannot be urged by a
stranger to the contract.

A voidable contract may be ratified, (20 *Barb.,* 435,)
expressly or impliedly. (2 *Par. on Cont.,* 278, &c.; 4 *Seld.,*
189; 17 *N. Y. R.,* 279.)  Hyde has constantly ratified his
contract with Cogswell, and still asks that it be regarded
and enforced.

Hyde's right to redeem is *suspended,* if not *gone.*  It can
be revived and enforced only through and after a repudia-
tion by him of the clause of forfeiture.  Stoker cannot
repudiate for him, nor has he any greater rights as judg-
ment creditor than Hyde has as party to the contract.

Cogswell, as pledgee, is entitled to the undisturbed pos-
session of his security until his claim is paid.  (3 *Duer,*
13.)  The court will not take it from him and place it in
the hands of a receiver.

Hyde and Cogswell reside in Nova Scotia. The loan was made there, in currency of the province. The law of the contract is, that it must be paid there, in similar currency. (2 *Hill*, 351; 4 *Wend.*, 377; 5 *Wend.*, 187; 3 *Chitty's Com. Law*, 100.)

ALLEN, Justice. I am of the opinion that the right to redeem the stock pledged remained in the pledgor Hyde after default in payment of the debt to Cogswell, the pledgee, at the day.

The law leans against forfeitures and penalties, and will not exact them except upon the plainest and clearest provisions showing the clear intention of the contracting parties to create them. Here the peculiar ground of the claim in the contract relied upon as terminating all rights of the pledgor upon non-payment at the day, indicates anything but an intent to extinguish those rights upon such default. If the construction contended for is the true one, the forfeiture was as complete upon the omission to pay a single semi-annual installment of interest as upon a failure to pay the principal sum at the time limited for its payment, which would hardly be claimed to have been the intent of the parties.

By the contract and the particular provision upon which stress is laid, the pledgor was enabled to sell and make title to the stock upon a default in the payments. But it is argued in the second connection, that the debt and all remedies for its collection are to remain, and the proceeds or avails of the stock only were to be applied in payment of the debt which was not extinguished. So long as the stock remained with the pledgee, the debt existed, and the pledge was collateral to it and the stock liable to be redeemed.

To this equity of redemption the plaintiff is entitled as the creditor of the pledgor, having exhausted his remedy at law. The interest of the debtor and pledgor is properly

designated, and its value and character well defined by the term by which it is known, "equity of redemption." It is merely an equitable right to redeem the stock upon the payment of the debt for which it is pledged. The creditor of the pledgor can acquire no other or different rights as against the pledgee than the pledgor would have. He cannot compel the pledgee to yield the pledge except upon full redemption, nor can he compel him to sell the stock or part with it upon any other terms. It is the privilege of the holder of the pledge to choose his own time to enforce the collection of his own debt, by a sale of the stock or otherwise; and if the pledgor or any one claiming under him, or asserting his rights, desires a sale or other disposition of the stock, or to realize the value of the equity of redemption, or the surplus that will remain upon a sale of the stock after the payment of the debt secured by it, they have but to exercise the right of redemption.

The plaintiff, as a judgment creditor of the pledgor, is entitled to redeem the stock, and the only question of importance is as to the mode and manner in which that redemption should be accomplished in order to do justice to all interested.

I. The plaintiff is pursuing an equitable remedy. He is in court asking equity, and within well settled principles must himself do equity. Cogswell, against whom equity is sought, cannot be asked to yield any portion of his legal rights. Anything less than the full measure of his legal claim awarded to him would be grossly unjust, as it would be taking from one creditor that which is legally his, to give to another without cause. In the view I take of the case, it is not necessary for me to go beyond this and inquire whether the court might not, under the circumstances, and to indemnify Cogswell, require something more than a strict legal performance of the contract of Hyde with him.

II. Cogswell is not in default. He was not bound to

seek his debtor to enable him to redeem the pledge, and he has not been put in default by any one seeking to redeem, and has not refused permission to redeem, and has not unreasonably resisted the claim to redeem. He has committed or attempted no fraud or wrong of any kind. There is no reason, therefore, for inflicting a penalty upon him, or imposing terms or conditions upon a redemption other than those which result from the contract and the legal relations of the parties.

III. Cogswell is not voluntarily seeking the aid of the courts of this state to enforce his rights against the pledge or the pledgor, so as thereby to have any benefit of the *lex domicilii* or *lex loci contractus*. He is involuntarily brought into our court, and only appears to protect his rights, and ask that if redemption is decreed it shall be upon just terms. He does not ask his money, or that the pledge shall be redeemed or sold, or that the right to redeem be foreclosed.

IV. The plaintiff can have no more beneficial relief than could have been asked by Hyde, the borrower and pledgor, but must take his place in all respects. The rights and equities of Hyde are precisely those of the plaintiff. If Hyde could not bring his action against Cogswell to compel him to come to New York, or to appoint an agent in this city to recover the money in discharge of the pledge, the plaintiff cannot ; and as against Cogswell the action is as if it were simply an action to redeem, and not connected with a demand for relief against Hyde and to acquire the right to redeem in his place.

V. The stock has no *situs* or locality which gives the court any peculiar jurisdiction in respect to it, or as against persons claiming it, or an interest in it. This cannot be made a *quasi* action *in rem* touching the stock. The company, the capital stock of which this is a part, is a New Jersey corporation, and it may or may not have books of transfer within the state. An office for the transfer of

the stock would not affect the residence, so to speak, of the corporation. But if it were a New York corporation it would make no difference; the stock is personal property, and follows the person of the owner.

VI. The place fixed by law for the performance of this contract is the residence of Cogswell, the creditor and pledgee. The parties (borrower and lender) at the time of the loan resided and still reside in Nova Scotia. The money was loaned there, and in the currency of that country, and no place of payment being fixed by the parties, the law makes the domicil of the creditor the place at which payment is to be made. It is the duty of the obligor to seek the obligee and pay or tender performance to him at his domicil. (*Smith* agt. *Smith*, 2 *Hill*, 351; *Goodwin* agt. *Holbrook*, 4 *W. R.*, 377; *La Faye* agt. *Rickett*, 5 *id.*, 187.) I do not speak now of the effect of a tender to the creditor away from his residence, for no such tender has been made in this case. If such tender had been made even in a state or county other than that of the creditor's domicil, it would probably have been good, as the debt follows the person of the creditor, and the only question then would be as to the currency in which the tender must be made. I see no reason why the place contemplated by the parties as the place for the performance of the contract should not control this as well as other matters affecting the rights of the parties. It would certainly be unreasonable to hold a party bound to accept, in discharge of an obligation by its terms or legal effect to be performed in one country, that which may for the time being chance to be current in a land where the creditor may be casually found. When the law or the agreement of the parties prescribes a place for the payment of money, the money of the place where payment is to be made must be intended as that in which payment is to be made. It would be sufficiently onerous to hold the creditor to accept his money away from home, and assume the risk and expense of its

transportation to the place where payable, without compelling him to accept as money that which would not be recognized as money, and might be valueless where wanted. (*See* 3 *Chitty's Com. Law*, 109.) Be this as it may, the most that can be claimed is, that payment may be made to the creditor in person, wherever found, and if not paid to the creditor in person, it must be paid or tendered at his residence, if no other place is designated by the contract for its payment. This is the legal effect of the contract, and any departure from it by directing payment at a different place would be an alteration of its terms in a material item. The debtor cannot compel the creditor to attend in person, or by an agent, in a foreign country, or at any place away from his own domicil, to receive his money and surrender securities. This court cannot assume an agency for the creditor in such case, and by authorizing money to be paid into court, discharge a debt due elsewhere. The risk and expense of transmitting or transporting the money to the place where payable, is legally a burden upon the debtor, and cannot, without the consent of the creditor, be shifted and placed upon the latter. His money would be worthless, that is, he would in effect receive less than his debt, by the amount of the risk and expense of transporting the money to his residence.

Cogswell is entitled to his debt in Nova Scotia. Such is the law of the contract, and no commercial or financial disturbances can affect the rule, and it is in no way material that temporarily exchange, usually in favor of New York and against Nova Scotia, is against New York and greatly in favor of Nova Scotia. But the present condition of monetary affairs here serves to illustrate the rule and demonstate its equity and reasonableness. No matter how the idea is expressed, whether it is said that gold and exchange bear a price beyond their value, or the ordinary currency of the country is greatly depreciated, the result is the same. A dollar paid here in the currency of the

country cannot be counted into a dollar or its equivalent in Nova Scotia, at the ordinary cost of transmission. The same causes have operated to advance the market value of the stock in controversy, and make it nominally worth more than the money for which it is held by Cogswell, while very likely it would not fetch, in money available in Nova Scotia, enough to pay that debt; so that if the pledgee can be compelled to accept his money here, the borrower and his creditors will be the gainers, but at the expense of the foreign creditor. This would be grossly inequitable, and the plaintiff here asking equity cannot impose terms so unjust and oppressive. The right of Cogs-well is to be paid his money before he surrenders the stock, and it is the duty of those desiring to redeem, and from which duty the court cannot relieve them, to seek him or go to his residence in Nova Scotia, and there pay the money. Equity entitles the plaintiff to redeem, and law as well as equity entitles Cogswell to his money in Nova Scotia.

The plaintiff may, therefore, redeem the stock upon payment to the creditor Cogswell, in Nova Scotia, the amount of his claim, with interest at six per cent., within thirty days, and upon such payment and redemption, and upon the payment to his attorney of the costs of this defence within the same time, the stock must be transferred to a receiver, to be by him sold, and after reimbursing the amount so paid, with interest, out of the avails, the residue to be applied in payment of the costs of this action and of the judgment against Hyde rendered on the pleadings. If the stock shall not be so redeemed, and the costs paid, as aforesaid, then the complaint to be dismissed as to Cogs-well, with costs.